Robert W. Cacace, J.
Plaintiff landlord has brought this action for moneys allegedly due and owing under a commercial lease agreement with the defendant tenant. The dispute is over a fire insurance clause in the lease which purports to make the defendant liable for any increase in insurance premiums caused by its acts, including the mere use to which it put the premises. The pertinent part of that clause reads as follows: "Tenant at its sole expense shall comply with all rules, orders, regulations or requirements of the New York Board of Fire Underwriters, or any other similar body, and shall not do, or permit anything to be done, in or upon said premises, or bring or keep anything therein, except as now or hereafter permitted by the Fire Department, Board of Fire Underwriters, Fire Insurance Rating Organization, or other authority having jurisdiction and then only in such quantity and manner of storage as not to increase the rate for the fire insurance applicable to the building, or use the premises in a manner which shall increase the rate of fire insurance on the *148 building of which demised premises form a part, or on property located therein, over that in effect prior to this lease. If by reason of failure of Tenant to comply with the provisions of this paragraph including, but not limited to, the mere use to which Tenant puts the premises, the fire insurance rate shall at the beginning of this lease or at any time thereafter be higher than it otherwise would be, then Tenant shall reimburse Landlord, as additional rent hereunder, for that part of all fire insurance premiums thereafter paid by Landlord, which shall have been charged because of such failure or use by Tenant, and shall make such reimbursement upon the first day of the month following such outlay by Landlord”. A reading of the clause reveals there is only one basic issue herein, namely, whether the tenant is liable for any part or all of the fire insurance premium increase occasioned by its use of the premises as a restaurant.
Testimony at the trial revealed that prior to plaintiff’s acquisition of the building, on August 1, 1973, there was $150,000 of fire insurance on the building, and that the defendant had been paying to the former owner the amount of $162 per annum for excess insurance premiums. There was no indication of how that figure was arrived at, nor in any event would it be relevant to the present determination. What is relevant is that the plaintiff increased the amount of the insurance to $231,000, the reasonableness of which figure is not in dispute, and now argues that this tenant is liable for that portion of the premium increase occasioned by its tenancy, to wit, $696.
There was at the trial a good deal of testimony about rates, adjustment factors and mercantile slips. That evidence indicated that the adjusted rate applied to each of two other tenants over the base rate for the building would be 24 cents per $100 of insurance. The adjusted rate applicable to the defendant herein over the base rate is 30.1 cents per $100 of insurance. The landlord contends that the defendant is liable for the entire 30.1 cents. Defendant argues alternatively that it is responsible for none of the increase, or at least only the part of the increase solely attributable to its occupancy, namely, 6.1 cents.
The fact that the defendant had earlier been paying the entire amount of the increase is irrelevant to the question of whether the terms of the lease obligate it to make those payments. (See 44 NY Jur, Payment, § 98.) Nor do the cases *149 cited by the defendant support the proposition that it is not obligated to pay any increase. None of the agreements in the cases cited provided that the tenant would be liable for increased insurance premiums due to "the mere use to which tenant puts the premises.” (Rose v Schumer, 280 App Div 966, mot for lv to app den 281 App Div 659; Kenneth Estates v Edelman, 237 NYS2d 987; Hagopian v Brandon, 203 Misc 570; Burton v Freiberg, 116 NYS2d 201.) Rather, the rationale in those cases was that absent such clause, it was inconsistent to permit a tenant to use the premises in a certain manner and then penalize him through payment of increased premiums for that very use (see Lease-Act Increasing Insurance Rate, Ann., 30 ALR2d 489).
The problem, then, is how much of the increase defendant should pay, and there is a dearth of case law as to how that apportionment should be made. The operative language in the lease is "the fire insurance rate * * * higher than it otherwise would be.” At first blush, this would seem to indicate that defendant is liable for only the 6.1 cents per $100, for if it did not occupy the premises the rate would be 24 cents due to the occupancy of the other two tenants. However, the inequity in this solution is manifest if we assume that rather than 30.1 cents, the rate occasioned by defendant’s occupancy was 25 cents. The result would then be the other tenants would be liable for 24 cents, while the defendant, although causing the highest rate in the building, would owe only 1 cent.
On the other hand, it is also unfair to charge the defendant the entire amount of the increase over the base rate when there are other tenants whose occupancies also cause the rate to increase. This would mean that these other tenants would be relieved of liability, despite their occupancies, should another tenant move in whose occupancy would increase the rate by only one cent.
The equitable solution, then, would be to apportion the part of the increase that is attributable to each tenant among those tenants, and if there is an excess, to charge that excess to the tenant responsible therefor. In this case, the following result is reached. The 24 cents is apportioned among the three tenants including the defendant, thereby making the defendant liable for one third of that amount, or 8 cents. In addition, the defendant is liable for the difference between the 30.1 cents and 24 cents, or 6.1 cents, making a total liability of 14.1 cents per $100. As the total insurance on the building is now *150 $231,000, the court finds for the landlord in the amount of $325.71.
While this holding will necessitate the recomputation of the excess insurance premium apportioned each time there is a change in occupancy, this is not too onerous a burden to place upon a landlord who will be receiving the benefit of such computation.
Submit judgment and warrant, said warrant to contain a stay of 30 days.